UNITED STATES of America,
Plaintiff-Appellee,

v.

MILLER BROTHERS CONSTRUCTION
COMPANY et al., Defendants,

Rapidways, Inc., Defendant-Appellant.

No. 74–1028.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 10, 1974.

Decided Nov. 13, 1974.

Robert L. Boyce, Jr., Kansas City, Kan. (Howard Washburn, Kansas City, Kan., on the brief), for defendant-appellant.

Daniel F. Ross, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Michael L. Paup, Dept. of Justice, Robert J. Roth, U. S. Atty., James A. Pusateri, Asst. U. S. Atty., Washington, D. C., on the brief), for plaintiff-appellee.

Before LEWIS and HILL, Circuit Judges, and CHRISTENSEN,* District Judge.

HILL, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Kansas ordering foreclosure of federal tax liens against certain real property, the ownership of which is in dispute.

The facts leading up to this appeal are complex and may be summarized as follows. Anthony Sielman owned certain land in Kansas City, Kansas. In 1952, Wilmer Miller (taxpayer) purchased this land but directed Sielman to deed it to Edward and Nellie Schmidt. The Schmidts, taxpayer's brother-in-law and sister-in-law, had no interest in the land but held it solely as taxpayer's nominee.

Taxpayer, in 1959, negotiated a mortgage of the land to Anchor Savings & Loan Company (Anchor) as security for a note evidencing the loan. The mortgage was arranged by taxpayer for his benefit and the Schmidts executed the mortgage at his request.

During this period of time taxpayer and his brother were partners in Miller Brothers Construction Company (Miller Brothers). The partnership failed to pay certain income and FICA taxes in 1959. Deficiencies were assessed against it and notice of tax liens was filed in 1959 and 1960.

Taxpayer became delinquent in his payments to Anchor and refinanced the loan through Investments, Inc. (Investments) in 1961. Investments paid off the delinquent note held by Anchor, took title to the land from the Schmidts, and gave taxpayer an option to purchase. Taxpayer again refinanced the loan in

---

* Of the District of Utah, sitting by designation.

1962 through Union Mortgage & Investment Company (Union). Union paid off Investments, took title to the land, and gave taxpayer an option to purchase. Sometime before May, 1963, Miller Brothers, already burdened with tax problems, encountered several financial setbacks culminating in foreclosure of its Small Business Administration loan and liquidation.

In May, 1963, taxpayer organized Fairfax Hauling, Inc. (Fairfax) to take over a hauling contract from the defunct Miller Brothers. Taxpayer was not an officer, director or stockholder in Fairfax, but he nevertheless exercised managerial control over the corporation.

At around the same time, taxpayer contacted Wilford Sublett, an officer of Rapidways, Inc. (Rapidways), a leasing corporation. Rapidways had previously leased trucks and heavy equipment to Miller Brothers and taxpayer wanted it to do the same for Fairfax. After mesne negotiations it was decided that Rapidways would lease trucks and equipment to Fairfax and loan it $5,000 for operating capital. Rapidways was to acquire legal title to the land in question and lease it to Fairfax with an option to purchase.

On June 7, 1963, Rapidways paid Union approximately $10,400, which amount Union used to close out taxpayer's option contract. Taxpayer was present at the closing and directed Union to place legal title in Rapidways' name. That same day Rapidways and Fairfax entered into a rental and option to purchase agreement which provided, inter alia, that Fairfax would receive legal title to the land after eleven months if it made all lease rental payments and paid Rapidways $10,400 plus interest.

Fairfax never used the land. It encountered financial problems after a few months of operation and became unable to fulfill its agreement with Rapidways. Rapidways took possession of the leased equipment, but not of the land. Although it pays taxes and insurance on the land, it has never used it or tried to sell it.

Since its purchase in 1952, taxpayer has exercised the rights of ownership over the land. He built improvements on it, occasionally rented the house to others, and his family used the land for recreation purposes. Taxpayer began using the land as a permanent residence in 1963.

On May 26, 1965, the government filed this suit against Miller Brothers and taxpayer.[1] The complaint stated, inter alia, that Miller Brothers was defunct and without assets and requested that taxpayer's real and personal property be sold to satisfy the tax liens. An amended complaint was filed on October 26, 1969, adding Rapidways as a defendant and the land to which it held legal title as property subject to the tax liens. The government claimed taxpayer was the equitable owner of the land and that Rapidways' interest therein was subject and inferior to the tax liens. Rapidways answered and asserted it acquired the land free and clear of any federal tax liens

On May 5, 1971, taxpayer died. On November 23, 1971, Rapidways filed a motion to dismiss the action for lack of jurisdiction on the grounds the government had failed to move for substitution of taxpayer's representative as a party to the action within 90 days after suggestion of death, as required by Rule 25 F.R.Civ.P. The district court denied the motion because a formal suggestion of taxpayer's death had not been made. Rapidways filed a formal suggestion of death on March 13, 1973.

The government, on June 5, 1972, successfully moved for a fifteen day extension of time to file its Rule 25 motion for substitution for the reason that a hearing for the appointment of taxpayer's administrator was not to be held until June 13, 1972. On June 9, 1972, Rapidways again filed a motion to dismiss on the grounds the government had

---

1. Several other parties were also named as defendants but all of the government's claims against them were determined by judgments rendered February 6, 1967, and March 30, 1970.

failed to comply with Rule 25. Thereafter, on June 26, 1972, the government moved to substitute taxpayer's administrator as a party to the action. Following a hearing, the district court denied Rapidways' motion and granted the government's motion.

Subsequent to trial the district court made findings of fact and conclusions of law, including the following: (1) the conveyances in issue were methods of loaning taxpayer money and taking title to the land as a security interest; (2) taxpayer possessed the equitable ownership of the land; (3) Rapidways was aware of taxpayer's tax problems and of his ownership in the land, and took title thereto as security for the cash advance and equipment lease; (4) Rapidways took legal title to the land subject to the tax liens. Accordingly, the district court ordered the tax liens foreclosed on the land. Rapidways' subsequent motions for a new trial and for amendment or alteration of the judgment were denied, and it appeals.

■ Rapidways first contends its February 23, 1972, motion to dismiss pursuant to Rule 25, F.R.Civ.P., should have been sustained.[2] Specifically, it contends a formal suggestion of death was not necessary for the Rule's 90 day time limitation to take effect because the government was fully aware of taxpayer's death.

Rule 25 provides that suggestion of death on the record is made by service of a statement of the fact of the death on the parties as provided in Rule 5, F.R.Civ.P.[3] 3B Moore, Federal Practice

---

2. Rule 25(a)(1) provides:
 If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

3. Rule 5:
 (a) Service: When required. Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

 In an action begun by seizure of property, in which no person need be or is named as defendant, any service required to be made prior to the filing of an answer, claim, or appearance shall be made upon the person having custody or possession of the property at the time of its seizure.
 (b) Same: How made. Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless the service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. Service by mail is complete upon mailing.
 (c) Same: Numerous Defendants. In any action in which there are unusually large numbers of defendants, the court, upon motion or of its own initiative, may order that service of the pleadings of the defendants and replies thereto need not be made as between the defendants and that any cross-claim, counterclaim, or matter constituting an avoidance or affirmative defense contained therein shall be deemed to be denied or avoided by all other

¶ 25.06[2.–1] and [3] (2nd ed. 1974). The 90 day time limitation does not commence until this has been done. *Id.* Since Rapidways failed to comply with the service and filing requirements of Rule 5, there was no suggestion of death on the record and the district court properly denied the motion to dismiss.

 Rapidways next contends the district court abused its discretion in granting the government an extension of time to file a motion for substitution because the government, aware of taxpayer's death in 1971 delayed initiation of probate proceedings to appoint an administrator for his estate until May, 1972. We disagree. A discretionary extension should be liberally granted absent a showing of bad faith on the part of the movant for substitution or undue prejudice to other parties to the action. *See* Rule 6, F.R.Civ.P.; 3B Moore, Federal Practice ¶ 25.06[3] (2nd ed. 1974). We find no bad faith attributable to the government and Rapidways has not shown that it was unduly prejudiced.

 Rapidways next contends the district court was required to determine the respective rights of the parties to any surplus proceeds from the foreclosure sale. Although a court must determine the merits of all claims to the property subjected to tax liability,[4] none of the parties to the instant action made any claims to surplus proceeds. The matter was never raised, the sole issue being whether, in view of the competing claims of the government and Rapidways, the property was subject to tax liability. Since parties are entitled only to a determination of issues raised before the court,[5] the district court committed no error in refraining to rule on the matter.

 Relying upon First Federal Savings & Loan Ass'n v. Liebert, 195 Kan. 100, 403 P.2d 183 (1965), and Kan.Stat. Ann. § 60–2405,[6] Rapidways argues the government's judgment must be revived against taxpayer's representative before the tax liens can be foreclosed. We disagree. *Liebert* concerns revival of a dormant judgment against a deceased debtor's personal representative and § 60–2405 concerns substitution of a deceased or incompetent judgment holder's personal representative as a successor in interest.

parties and that the filing of any such pleading and service thereof upon the plaintiff constitutes due notice of it to the parties. A copy of every such order shall be served upon the parties in such manner and form as the court directs.

 (d) Filing. All papers after the complaint required to be served upon a party shall be filed with the court either before service or within a reasonable time thereafter.

 (e) Filing With the Court Defined. The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that the judge may permit the papers to be filed with him, in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk.

4. 26 U.S.C. § 7403(c) provides in part:

 The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale upon such property . . . *and a distribution of* the proceeds of such sale according to the findings of the court . . . .

5. *See, e. g.,* Armstrong Cork Co. v. Lyons, 366 F.2d 206 (8th Cir. 1966); Daniels v. Thomas, 225 F.2d 795 (10th Cir. 1955), cert. den'd, 347 U.S. 1139, 70 S.Ct. 867, 98 L.Ed. 1139; 49 C.J.S. Judgments §§ 42, 49 (1947).

6. Kan.Stat.Ann. § 60–2405 (1964) states:

 Any person who claims to have succeeded to the interest of the holder of a judgment by appointment as personal representative for a deceased or incompetent judgment holder, by assignment, by operation of law, or otherwise, shall file with the clerk a copy of his letters as personal representative, assignment, or proceedings effecting such transfer, and thereafter such successor in interest shall be entitled to all the rights and remedies available to his predecessor and may proceed to enforce the same in his own name as such successor. If the validity of any such transfer be controverted by any party affected thereby, the court shall, on reasonable notice to all interested parties whose whereabouts are known, determine the respective rights and liabilities of all the parties.

In the instant case taxpayer died during pendency of the action, not after rendition of a judgment, and the administrator of his estate was substituted as a party pursuant to Rule 25. Since a substituted party steps into the same position as the original party there is a continuance of the original action and a separate proceeding against the substituted party is not necessary. *See, e. g.,* Ransom v. Brennan, 437 F.2d 513 (5th Cir. 1971), cert. den'd, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680; 3B Moore, Federal Practice ¶ 25.05 (2nd ed. 1974).

■ The next issue concerns the admission into evidence of taxpayer's deposition. It was admitted on the grounds it showed fraud, an exception to the parol evidence rule. Rapidways now contends those portions of the deposition not concerning it should have been excluded, because there was no evidence it had knowledge of or was involved in the fraud. Because testimony may take a wide range where fraud is alleged we believe the entire deposition was admissible. *See, e. g.,* 3 Jones on Evidence § 16:2 (6th ed. 1972). Those portions of the deposition objectionable to Rapidways showed the extent and purpose of taxpayer's scheme.

The paramount issue on appeal concerns taxpayer's interest in the land in question. The government contended, and the district court found, that taxpayer was the equitable owner of the land and that legal title thereto was held by others, including Rapidways, only as a security interest. Rapidways asserts that taxpayer never had an interest in the land that could be reached by the government. It takes the position that the conveyances were merely option to purchase agreements under which a purchaser who makes negligible or no payments acquires no interest therein. Since the government's interest in the land can rise no higher than taxpayer's, Rapidways contends the government acquired no interest in the land whatsoever.

■ We find no merit in Rapidways' position. It is clear that the option contracts given to taxpayer were part of more complex refinancing arrangements in which he remained the equitable owner of the land. Taxpayer stated, in his deposition, that the land was conveyed as a security interest and not as an absolute sale. This is supported by the testimony of a Union employee who stated Union acquired the land as a means of making a loan to taxpayer. And, the president of Fairfax testified that taxpayer "put his farm up" to get the corporation going.

The option contracts themselves appear to have been given in recognition of taxpayer's interest in the land. Sublett, for example, testified he thought the land was worth about $15,000 but he nevertheless gave taxpayer an option to purchase for $10,400 plus interest, approximately the same amount Rapidways paid to Union for the land. Finally, the fact taxpayer exerted dominion and control over the land from 1952 until his death in 1971 is indicative of his ownership. The record does not disclose that Rapidways or any prior legal title holder used the land or interfered with taxpayer's use of the land.

■ The government, Rapidways asserts, failed to prove it had actual knowledge of taxpayer's interest in the land. We do not agree. Taxpayer's son, present at a May, 1963, meeting between Sublett and taxpayer, testified that Sublett agreed to take legal title to the land as collateral. And taxpayer stated, in his deposition, that Rapidways was aware of his interest in the land. Furthermore, Rapidways did not purchase the land directly from Union as such but acquired it by paying off taxpayer's option contract with Union. Taxpayer then directed that legal title be placed in Rapidways' name. These facts are inconsistent with Rapidways' contention that it was unaware of taxpayer's interest in the land.

Affirmed in all respects.