F.W. FRICKE, JR., AND EUGENE LEDDY, PLAINTIFFS–APPEL-
LANTS, v. GELADARIS, INC., AND BOYD COUSOULIS AND
JOHN DOE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1987—Decided October 29, 1987.

Before Judges O'BRIEN and HAVEY.

*Donald G. Sweetman* argued the cause for appellants
(*Thomas E. Maloney, Jr.,* attorney; *Donald G. Sweetman* on
the brief).

*Diana Powell McGovern* argued the cause for respondents
(*O'Donnell, Kennedy, Vespole & Piechta,* attorneys; John C.
Kennedy of counsel; *Diana Powell McGovern* on the brief).

The opinion of the court was delivered by

HAVEY, J.A.D.

The issue raised by this appeal, on leave granted, is whether
an action for malicious prosecution survives the death of the

plaintiff under the Survival Act, *N.J.S.A.* 2A:15–3, which provides for the survival of an action "... for any trespass done to the person or property ..." of the testator or intestate. The motion judge concluded that the action did not survive and entered summary judgment dismissing Fricke's action. We disagree. We hold that malicious prosecution is a "trespass done to the person ..." and thus does not abate upon the death of the plaintiff. We therefore reverse and remand for further proceedings.

The pertinent facts are not in dispute. Plaintiffs were patrons at a restaurant owned by defendant Geladaris, Inc.. A dispute arose as to whether plaintiffs had paid the full amount of their food bill. When confronted by the manager, defendant Boyd Cousoulis, plaintiffs claimed that they had given the full amount of the bill to the waiter plus a $5 tip. When plaintiffs refused Cousoulis' demand that they pay the bill, the West Orange police were summoned. Based on the manager's complaint, both plaintiffs were charged with theft of services, contrary to *N.J.S.A.* 2C:20–8. According to plaintiffs, they were handcuffed at the scene and transported to police headquarters. When the case was reached for trial in the municipal court, it was dismissed because defendants failed to appear.

Plaintiffs filed the present malicious prosecution action in which they sought compensatory and punitive damages for their arrest without probable cause, deprivation of their liberty, humiliation and damage to their reputations. Two months after the complaint was filed, Fricke died.

Upon Fricke's death, defendants moved for summary judgment as against Fricke. Relying on *Patrick v. Esso Standard Oil Company*, 156 *F.Supp.* 336, 340–341 (D.N.J.1957), defendants argued that malicious prosecution was not an action for "trespass done to the person", but an action "on the case," and thus did not survive Fricke's death. The motion judge agreed and dismissed Fricke's complaint. The judge acknowledged that the Supreme Court in *Canino v. New York News, Inc.*, 96 *N.J.* 189 (1984) had recently held that an action for libel or

slander survives under the act. However, the judge gave significance to the following passage in *Canino:*

> Because at common law an action for libel or slander was considered a trespass to the person under *N.J.S.A.* 2A:15-3, the action survives the death of the person claiming injury. [*Id.* at 198, emphasis supplied].

The judge concluded from this language that *Canino* impliedly held that the common-law distinction between trespass to the person and "on the case" was not abolished, and that *Canino's* holding was predicated strictly on the fact that libel or slander was a common-law trespass to the person.

In *Patrick v. Esso Standard Oil Company, supra,* the Federal District Court, applying our Survival Act, held that an action for malicious prosecution abated upon plaintiff's death. 156 *F.Supp.* at 340–341. *Patrick* relied primarily on *Meyer v. Peter,* 9 *N.J.Misc.* 1309 (S.Ct.1931), which concluded that since malicious prosecution is "... peculiarly directed to feeling and reputation, and is an action on the case, it is not saved by [the Survival Act] which gives the executor or administrator a cause of action for trespass done to the person or property" of their testator or intestate. *Id.* at 1311. *Patrick* also cited with approval the holding in *Alpaugh v. Conkling,* 88 *N.J.L.* 64, 67 (S.Ct.1915), that defamation actions, considered purely as injuries to the feelings and reputation, abated at defendant's death under the then existing Abatement Act (Comp.Stat., p. 2260), which permitted survival of an action against the estate of a deceased defendant who committed "any trespass to the person."

*Patrick, Meyer* and *Alpaugh* bottomed their holdings on the distinction between the common-law writs of trespass and trespass on the case. At common law, trespass was considered quasi-criminal in nature and was the remedy for forcible, direct and immediate injury to person or property. *See Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 *N.J.* 37, 46 (1984). Trespass on the case was developed as a supplement to trespass to afford a remedy for injury resulting indirectly. *Id.* The distinction between the two writs "... was not between intentional and negligent conduct, but ... on the causal se-

quence and the directness of the harm." *Id.* In an action "on the case," there could ordinarily be no liability unless actual damage was proven. *Id; see also W. Prosser, Handbook on the Law of Torts,* § 7, at 28–30 (4 ed. 1971).

In *Ten Eyck v. Runk,* 31 *N.J.L.* 428 (S.Ct.1866), Chief Justice Beasley interpreted "trespass to the person" in the Abatement Act without reliance on the common-law writ distinction. *Ten Eyck* involved an action "on the case" for property damages done by a back-flow of dammed waters. The Chief Justice held:

> It is obvious that in its widest scope the word "trespass" signifies every injury to property ... and being such, it clearly falls within the letter of the statute. But not only this, it is, as it seems to me, just as clearly embraced in its general scope or spirit. This act is highly remedial in its character ... There was certainly nothing in morals, in public policy, or in good sense, to justify the continuance of a rule which grounded a man's right to recover for an injury to his person or estate, inflicted by a tortious act, on the contingency of the party injured surviving to the date of the judgment ... *In my opinion the word "trespass," as used in the section under consideration, must be received as equivalent in meaning to the word "tort"*—so that the effect of the provision is to give a right of suit against the personal representatives of a deceased wrong-doer for any injurious act of a suable nature, without reference to the form in which the remedy must be sought. [*Id.* at 429–231, emphasis supplied].

The Supreme Court in *Canino v. New York News, Inc., supra,* 96 *N.J.* at 194–195, embraced the *Ten Eyck* rationale in holding that libel or slander, being an injury to a person quite apart from economic loss, was a "trespass done to the person or property" under *N.J.S.A.* 2A:15–3. *Canino* also cited with approval *Weller v. Home News Pub. Co.,* 112 *N.J.Super.* 502 (Law Div.1970), in which Judge Furman expressly declined to follow *Alpaugh,* concluding that:

> To construe trespass to person as not encompassing libel or invasion of the right of privacy is to import a limitation into the survival statute which is not expressed. The term "trespass" in the statute is equated with "tort." It should not be modified by implication to exclude torts in which damages for emotional distress, not physical injury, are sought. Any such distinction is arbitrary. [*Id.* at 506].

Judge Furman cited Dean Prosser's view that:

> ... the modern trend is definitely toward the view that tort causes of action and liabilities are as fairly a part of the estate of either plaintiff or defendant as contract debts, and that the question is rather one of why a fortuitous event

such as death should extinguish a valid action. Accordingly, survival statutes gradually are being extended; and it may be expected that ultimately all tort actions will survive to the same extent as those founded on contract. [*Prosser, Law of Torts* (3 ed. 1964) at 923.]

In light of *Canino's* holding that an action for libel or slander is a "trespass done to the person", and its embracement of *Ten Eyck's* expression that the term "trespass" in the Survival Act is equated with "tort," we have little difficulty in concluding that an action for malicious prosecution also survives the death of the plaintiff. We do not share the motion judge's interpretation of *Canino* as intending to perpetuate the common-law distinctions so as to cause abatement of certain common-law "case" actions. To the contrary, *Canino* underscores the significant erosion under recent decisional law of the common-law distinction. That erosion is further noted in *Nappe v. Anschelewitz, Barr, Ansell & Bonello, supra,* 97 *N.J.* 37, which held that while a "vestige" of the common-law distinction, requiring actual damages in certain "case" actions may still exist, the distinction "... no longer serves a useful purpose, at least where a victim of an intentional wrong has suffered some loss, detriment, or injury ..." even without proof of compensable damages. *Id.* at 47–48.

Equating the term "trespass" in the Survival Act with "tort," we hold that "trespass done to the person" is intended to include malicious prosecution actions. We reject *Patrick* which held to the contrary because it relies on earlier New Jersey cases which are no longer controlling. Further, it is illogical and unfair to resolve the question whether a cause of action survives the death of a plaintiff based on the common-law writ distinction. Redress for a tortious act should not depend on the "causal sequence and directness of the harm." *Nappe,* 97 *N.J.* at 46. Nothing in common sense justifies a rule abating a cause of action for damage to reputation and emotional distress caused by malicious prosecution, while permitting survival of an action for mild injuries suffered in an automobile accident. This is particularly so in light of the modern-day expansive view toward claims for emotional distress. *See e.g., Evers v. Dol-*

*linger*, 95 *N.J.* 399 (1984); *Portee v. Jaffee*, 84 *N.J.* 88, 96 (1980); *Eyrich For Eyrich v. Dam*, 193 *N.J.Super.* 244 (App. Div.), certif. den. 97 *N.J.* 583 (1984).

Moreover, the humiliation, mental distress and damage to reputation resulting from a malicious prosecution can be no different than a similar injury caused by a libel or slander. Since *Canino* now recognizes that an action for libel or slander survives under the act, it would be illogical to conclude that malicious prosecution did not survive. Finally, our holding that an action for malicious prosecution survives is, in our view, in keeping with the underlying objective of the tort process: to ensure that innocent victims have avenues of legal redress, absent a contrary, overriding public policy. *See People Exp. Airlines, Inc. v. Consolidated Rail*, 100 *N.J.* 246, 254–255 (1985). That policy reflects the fundamental purposes of tort law: "that wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct." *Id.* There is no overriding public policy that supports a preclusion of a recovery for malicious prosecution and the rewarding of a tortfeasor simply because the injured party does not survive.

The order for summary judgment is reversed. We remand for further proceedings. We do not retain jurisdiction.