Slaydon HAWES et al.

v.

JOHNSON & JOHNSON et al.

Civil Action No. 94–5332 (NHP).

United States District Court,
D. New Jersey.

Oct. 15, 1996.

Carol H. Alling, Selikoff & Cohen, P.A., Mount Laurel, NJ, for plaintiffs.

Francis X. Dee, Carpenter, Bennett & Morrissey, Newark, NJ, for defendants.

HEDGES, United States Magistrate Judge.

This matter comes before me on plaintiffs' motion to substitute a party pursuant to Rule 25(a) due to the death of plaintiff Manohar Kadam (Kadam). I have considered the papers submitted in support of and in opposition to the motion. There was no oral argument. Rule 78.

One of the original plaintiffs in this action, Kadam, died on August 15, 1995.[1] On September 1, 1995, Letters Testamentary were issued to his wife, Vanita Kadam (Mrs. Kadam), naming her as executor of the estate of Kadam. On the same date, plaintiffs' counsel filed a pleading in this Court which made reference to Kadam's death. Thereafter, on June 24, 1996, pursuant to Rule 25(a), Mrs. Kadam filed this motion for substitution.

Defendants submitted a brief in opposition to this motion, asking this Court to deny the motion on four bases. First, defendants argued that the motion should be rejected because the 90 day time period provided in Rule 25(a)(1) expired. Second, defendants asserted that Kadam's death prevented his estate from proving his claims. Third, even if it prevailed, defendants contended that Kadam's estate would recover nothing because the estate would have to tender back more money than it could obtain in this action. Fourth, according to defendants, plaintiff's claims for liquidated and punitive damages did not survive his death.

1. Before his death, Kadam had filed a civil action with co-plaintiff Robert Muscarella which

## I. TIMELINESS OF MOTION TO SUBSTITUTE A PARTY

Rule 25(a) provides for the substitution of a party in the event of death. Specifically, the Rule states:

> Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

This Court cannot accept defendants' argument that the reference to Kadam's death in the September 1, 1995 pleading triggered the commencement of the 90 day time period. Under Rule 25(a), the time period for filing a motion for substitution begins only after a party's death is "formally suggested on the record by the filing and service of a written statement of the fact of death as provided in Rule 5 of the Federal Rules of Civil Procedure and Form 30." *Blair v. Beech Aircraft Corp.*, 104 F.R.D. 21, 22 (W.D.Pa.1984), *aff'd*, 787 F.2d 580 (3d Cir.1986); *see United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1034 (10th Cir. 1974); *Mobil Oil Corp. v. Lefkowitz*, 454 F.Supp. 59, 70 (S.D.N.Y.1977). Actual knowledge of a party's death by all the parties is immaterial. *See Miller Bros.*, 505 F.2d at 1034–35; *Tolliver v. Leach*, 126 F.R.D. 529, 530 (W.D.Mich.1989). Moreover, Rule 25 neither states that a suggestion of death must be initiated nor provides a time frame for making such a suggestion. *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 836 (3d Cir.1994).

In *Blair*, the Third Circuit affirmed the district court, which held that mere reference to a party's death in either court proceedings or pleadings is insufficient to trigger the 90 day time period for filing a Rule 25(a) motion for substitution. 787 F.2d at 580; *see Grandbouche v. Lovell*, 913 F.2d 835, 836–37 (10th Cir.1990); *Kaldawy v. Gold Serv. Movers, Inc.*, 129 F.R.D. 475, 477 (S.D.N.Y.1990). Here, none of the parties filed such a formal writing. The mere refer-

was later consolidated with the action of Sandra Slaydon Hawes by order filed March 20, 1995.

ence to the death of Kadam in plaintiffs' reply brief submitted in support of their class certification motion is insufficient to trigger the commencement of the 90 day time limit. In addition, the plaintiffs are not under any time constraints to make a formal suggestion of death. Accordingly, the 90 day period for substituting parties has not yet begun, as a formal suggestion of death, identifying the representative to be substituted, has not yet been filed.

## II.  FUTILITY OF MOTION TO SUBSTITUTE A PARTY

■ In the alternative, defendants contended that the motion was futile. I also find this argument unpersuasive. Defendants asserted that Kadam's estate could not prove that he was constructively discharged because the estate lacked sufficient competent evidence. On the other hand, plaintiffs claimed that there was ample evidence of a constructive discharge. At this time, discovery is not complete, and so I find it would be premature to make any rulings regarding the sufficiency of the proofs offered by plaintiffs.

In addition, I will not entertain defendants' argument that the estate of Kadam could not recover anything even if it prevailed. As plaintiffs correctly asserted, there remain issues of law and fact on how much the estate could recover in this action. Accordingly, I will not speculate as to the amounts owed or recoverable by plaintiff's estate.

## III.  SURVIVAL OF PLAINTIFF'S CLAIMS

Before addressing whether the estate could recover compensatory, punitive, and liquidated damages, this Court must first determine whether age, national origin, and disability discrimination claims under the Age Discrimination in Employment Act of 1967 (ADEA), § 2, 29 U.S.C. § 621 *et seq.*; and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5–1 *et seq.*, survived the death of a plaintiff.[2]

2.  While the parties made reference to a Title VII claim in their pleadings, the Amended Complaint asserted no such claim regarding plaintiff Kadam. Therefore, there is no need for me to

### A.  NJLAD CLAIMS

■ LAD does not expressly state whether a discrimination claim survives the death of a plaintiff. Under the common law rule, tort actions involving wrongdoings committed against real property and those affecting a person's tangible or intangible interests abated upon the death of a party. *See Weller v. Home News Publishing Co.*, 112 N.J.Super. 502, 506, 271 A.2d 738 (Law Div.1970); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 125A, at 940–41 (5th ed. 1984).

However, New Jersey's Survival Statute, N.J.S.A. 2A:15–3, which abolished the common law rule, sustained a deceased party's cause of action for "trespass done to the person or property" as well as similar actions brought against a deceased tortfeasor. N.J.S.A. 2A:15–3. The statute provides:

> Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damage as their testator or intestate would have had if he was living.

Caselaw interpreting the survival statute provides insight with respect to the survival of a LAD claim upon a plaintiff's death. "The term 'trespass' in the [survival] statute is equated with 'tort.' It should not be modified by implication to exclude torts in which damages for emotional distress, not physical injury, are sought." *Canino v. New York News, Inc.*, 96 N.J. 189, 195, 475 A.2d 528 (1984) (*quoting Weller*, 112 N.J.Super. at 505–06, 271 A.2d 738); *Ten Eyck v. Runk*, 31 N.J.L. 428, 431 (1866). Based upon the language and remedial purpose of the survival statute, the New Jersey Supreme Court held that an action for libel or slander is a "trespass done to the person" as the phrase is used in the statutory provision. *Canino*, 96 N.J. at 195, 475 A.2d 528. Accordingly, so

address whether claims for damages under Title VII of the Civil Rights Act of 1964, § 701, 42 U.S.C. § 2000e *et seq.*, survived the death of plaintiff.

such a claim survived the death of a party.[3] 96 N.J. at 195, 475 A.2d 528.

■ While LAD does not expressly disclose whether the Legislature intended to treat discrimination as a tort, the Legislature addressed this issue by way of amendment. *See Milazzo v. Exxon Corp.*, 243 N.J.Super. 573, 575, 580 A.2d 1107 (Law Div.1990) (finding that 1990 amendment made all remedies available in common law tort actions accessible to prevailing plaintiffs). The April 16, 1990 amendment states in relevant part:

> This bill would [ ] add language to the findings section of the LAD listing the hardships (i.e. economic loss, emotional trauma)[4] which victims of discrimination might suffer and language indicating that the LAD is to be liberally construed so that all common law remedies including compensatory and punitive damages, are available to persons protected by the LAD.

Where the Legislature has expressly conveyed its intent, the court should give it full force and effect. *Milazzo*, 243 N.J.Super. at 575–76, 580 A.2d 1107.

The New Jersey Supreme Court examined the 1990 amendment in the context of determining the most applicable statute of limitations for LAD claims. *Montells v. Haynes*, 133 N.J. 282, 292, 627 A.2d 654 (1993). Specifically, the Court addressed whether injuries under LAD more closely resembled an "injury to the person" under N.J.S.A. 2A:14–2 or a "tortious injury to the rights of another" under N.J.S.A. 2A:14–1. *Montells*, 133 N.J. at 291, 627 A.2d 654.

In separating these two types of injuries, the Court reasoned that the Legislature "distinguished personal injuries involving physical or emotional harm from those involving economic harm." *Montells*, 133 N.J. at 291,

627 A.2d 654. The LAD amendment identifies the types of injuries from which a victim of discrimination may suffer. *See supra* note 4. The Court emphasized that at common law the nature of the injuries identified by the amendment would render the two-year personal-injury statute of limitations applicable, with the exception of time and economic loss. 133 N.J. at 292. The Court also stressed that the personal-injury limitations period more closely conformed with LAD's remedial purpose of eradicating discrimination. 133 N.J. at 292. *See Rumbauskas v. Cantor*, 138 N.J. 173, 178, 649 A.2d 853 (1994) (held that invasion of privacy action premised on intrusion of seclusion was claim for "injury to the person"); *White v. Johnson & Johnson Products, Inc.*, 712 F.Supp. 33, 37–38 (D.N.J.1989) (held that personal-injury statute of limitations applicable to NJLAD claims).

While recognizing one purpose of LAD is to vindicate economic rights and some rights based in contract law, the *Montells* Court underscored that "the statute strikes directly at conduct that injures the personhood of another. A discrimination claim cuts most deeply at the personal level." 133 N.J. at 293, 627 A.2d 654. *See White*, 712 F.Supp. at 37.

Examining the New Jersey Supreme Court's characterization of the injuries identified in LAD as well as its construction of the term "trespass" in the survival statute, I am satisfied that a discrimination action under LAD survived the death of a plaintiff. As Dean Prosser pointed out, there is a "tendency to extend survival statutes, or to construe them liberally to preserve a cause of action where there is doubt." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 126, at 943 (5th ed. 1984); *see Cani-*

---

3. Other courts have also broadly interpreted the term "trespass" within the survival statute provision to encompass other torts. *See, e.g., Fricke v. Geladaris*, 221 N.J.Super. 49, 53, 533 A.2d 971 (App.Div.1987) (held that malicious prosecution claim does not abate upon death of plaintiff); *Weller*, 112 N.J.Super. at 507, 271 A.2d 738 (held that survival statute applies to actions for libel and invasion of right of privacy).

4. Under the findings section of LAD, N.J.S.A. 10:5–3, the Legislature concluded:

[that] because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. The personal hardships include: economic loss and time loss; physical and emotional stress; severe emotional or physical trauma; homelessness; anxiety; career, education, family, and social disruption; and adjustment problems, which particularly impact on those protected by this act.

*no,* 96 N.J. at 194–95, 475 A.2d 528; *Fricke,* 221 N.J.Super. at 52–53, 533 A.2d 971.

In addition, plaintiff's LAD claims for compensatory damages in the nature of emotional injuries, back pay, and benefits as well as punitive damages under LAD survived his death. New Jersey's survival statute permits executors or administrators of an estate to maintain the trespass action "of their testator or intestate against the trespasser and recover their damages as their testator or intestate would have had if he was living." N.J.S.A. 2A:15–3. Although the survival statute does not expressly provide for an award of punitive damages, the 1990 amendment to LAD now states that all common law tort remedies, including compensatory and punitive damages, will be available to prevailing plaintiffs. N.J.S.A. 10:5–3.

■ When the two statutes are construed together, I conclude that an executor of an estate may be substituted as a party in an action for discrimination under LAD and recover compensatory and punitive damages. This conclusion is consistent with the intent of the Legislature to liberally construe LAD "in combination with other protections available under the laws of this State" when awarding such common law remedies. N.J.S.A. 10:5–3.

While tort claims abated at death under the common law, this rule was based on the notion that "tort remedies were an adjunct to criminal penalties." *Canino,* 96 N.J. at 192, 475 A.2d 528. Defendant failed to appreciate, however, that the origins of the common law rule convinced the New Jersey Supreme Court that the rule "bears little relevance to a modern system of justice." 96 N.J. at 192, 475 A.2d 528. The language and the remedial purposes of LAD and the survival statute convince me that Kadam's discrimination claim as well as his claims for compensatory and punitive damages under LAD survived his death.

### B. *ADEA CLAIM*

■ The issue here is whether Kadam's action for compensatory damages in

the nature of emotional injuries [5] as well as claims for liquidated and punitive damages under the ADEA survived his death. Whether an action grounded in federal law survives the death of the plaintiff is governed by federal common law in the face of congressional silence. *Schreiber v. Sharpless,* 110 U.S. 76, 80, 3 S.Ct. 423, 424, 28 L.Ed. 65 (1884) (action for recovery of penalties for copyright infringement); *Smith v. Dep't of Human Services,* 876 F.2d 832, 834 (10th Cir.1989) (action by plaintiff's estate to recover liquidated damages under ADEA).

■ Under the federal common law, the traditional rule provides that an action for a penalty abates upon the death of the plaintiff. *Schreiber,* 110 U.S. at 80, 3 S.Ct. at 423; *Smith,* 876 F.2d at 835. In determining whether an action is penal or remedial in nature, a court must make such an inference from the language and history of the law. *Smith,* 876 F.2d at 835.

In *Murphy v. Household Fin. Corp.,* 560 F.2d 206, 209 (6th Cir.1977), the Sixth Circuit Court of Appeals used a three-factor test to determine whether a statute is penal. A court must assess: "1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." 560 F.2d at 209.

Applying the *Murphy* test, a number of courts held that an ADEA action survived the death of a plaintiff, finding that the statute was remedial rather than penal in nature. *E.g., Khan v. Grotnes Metalforming Sys., Inc.,* 679 F.Supp. 751, 756 (N.D.Ill. 1988); *Cleary v. United States Lines, Inc.,* 555 F.Supp. 1251, 1261 (D.N.J.1983); *Asklar v. Honeywell, Inc.,* 95 F.R.D. 419, 424 (D.Conn.1982). These courts concluded that "while the ADEA does provide for liquidated damages, ... its primary purpose is to compensate, and where appropriate reinstate, individuals who have suffered employment dis-

---

**5.** In the Amended Complaint, Kadam alleged that as a victim of discrimination he suffered emotional distress, anxiety, and humiliation.

crimination because of their advanced age." *Asklar,* 95 F.R.D. at 423; *see Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3d Cir.1977) ("The make whole standard of relief should be the touchstone ... in fashioning both legal and equitable remedies in (ADEA) cases.") In addition, these courts determined that recovery for damages under the ADEA remedies wrongs committed against the individual, runs to the individual wronged, and is not disproportionate to the injury sustained. *Asklar,* 95 F.R.D. at 423.

Some of these cases were decided, however, before the Supreme Court characterized liquidated damages as punitive in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985). While examining the legislative history of the ADEA, the *Thurston* Court stated that "Congress intended for liquidated damages to be punitive in nature." 469 U.S. at 125, 105 S.Ct. at 623. The legislative history reflected that the purpose of the liquidated damages provision was to deter willful violations of the ADEA. 469 U.S. at 125, 105 S.Ct. at 623.

Based upon the Tenth Circuit's analysis in *Smith,* 876 F.2d at 836–37, defendants argued that Kadam's claims for liquidated and punitive damages under the ADEA did not survive. While this Court recognizes the *Smith* holding in light of *Thurston, Smith* is distinguishable. *Smith* involved a claim *solely* for liquidated damages.[6] Emphasizing the traditional federal common law rule that actions for penalties abate at death, the Court held that a liquidated damages claim did not survive the death of a plaintiff. *Smith,* 876 F.2d at 836. In fact, the *Smith* court distinguished cases such as *Asklar,* which were decided before *Thurston,* and those cases in which only compensatory damages and reinstatement were sought under the ADEA. *E.g., Khan,* 679 F.Supp. at 756 (cites *Asklar* for rule that ADEA is primarily a remedial

statute). As the *Smith* court emphasized, the Supreme Court cautioned that in examining the survival of a claim, "a court should look beyond 'forms and modes of proceedings' and concentrate on the nature of the action brought." *Smith,* 876 F.2d at 837 (*quoting Schreiber,* 110 U.S. at 80, 3 S.Ct. at 423).

In the instant case, plaintiffs sought compensatory damages as well as punitive and liquidated damages. Unlike *Smith,* this is not a case essentially for liquidated damages under the ADEA, and so to focus on the generally remedial nature of the ADEA is not improper. Based upon the ADEA's remedial purpose of eradicating discrimination and consistent with other circuits, I find that plaintiff's claims for compensatory damages in the nature of emotional injuries under the ADEA survived his death. *See Khan,* 679 F.Supp. at 756 (held action for compensation and reinstatement survives death of plaintiff); *Shkolnik v. Combustion Eng'g, Inc.,* 856 F.Supp. 82, 87–88 (D.Conn.1994) (lost fringe benefits claim, including life insurance policy, survives death of plaintiff); *cf. Slatin v. Stanford Research Inst.,* 590 F.2d 1292, 1295–96 (4th Cir.1979) (held that Congress intended to prevent general damages award for pain and suffering under ADEA, finding reimbursement and reinstatement adequate to alleviate harm from discrimination).

However, after *Thurston,* the Third Circuit held that liquidated damages are punitive in nature. *See Turner v. Schering–Plough Corp.,* 901 F.2d 335, 346 (3d Cir.1990); *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 382 (3d Cir.1987); *Rickel v. C.I.R.,* 900 F.2d 655, 666 (3d Cir.1990).[7] In light of the federal common law rule and the governing law of this Circuit, I conclude that plaintiff's claims for liquidated and punitive damages which are penal in nature under the ADEA did not survive his death.

**6.** In *Smith,* plaintiff had originally sought review of his discharge in state court. Having been granted judgment in state court for reinstatement, back pay, and benefits, his pending federal court action involved only liquidated damages.

**7.** Other courts have reached the same conclusion. *See, e.g., Smith,* 876 F.2d at 837 (liqui-

dated damages are punitive in nature and thus abate at death); *Caraballo v. South Stevedoring, Inc.,* 932 F.Supp. 1462, 1466 (S.D.Fla.1996) (punitive damages do not survive plaintiff's death); *Duart v. FMC Wyoming Corp.,* 859 F.Supp. 1447, 1451 n. 2 (D.Wyo.1994), *aff'd,* 72 F.3d 117 (10th Cir.1995) (liquidated damages do not survive death of plaintiff).

704

Accordingly, all the LAD claims and the ADEA claims for compensatory damages survived the death of Kadam, and so the motion for substitution is **GRANTED** as to those claims. However, the remaining claims for liquidated and punitive damages under the ADEA were penal in nature, did not survive Kadam's death, and the motion is **DENIED** as to such claims.

**SO ORDERED.**