851 A.2d 88 (2004)
370 N.J. Super. 282
Michael CASTRO, Julio Trinidad Costa, on behalf of themselves and others similarly situated, Plaintiffs-Respondents,
v.
NYT TELEVISION, the New York Times Company and Discovery Communications, Inc., Defendants,
v.
Jersey Shore Medical Center and Meridian Health System, Defendants-Appellants.
Joseph Kinsella, Plaintiff-Respondent,
v.
NYT Television, The New York Times Company and Discovery Communications, Inc., Defendants-Appellants,
v.
Jersey Shore Medical Center and Meridian Health System, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 2004.
Decided June 29, 2004.
*91 Charles S. Sims (Proskauer Rose) of the New York bar, admitted pro hac vice, New York City, argued the cause for appellants in A-1862-03T2, NYT Television, The New York Times Company and Discovery Communications, Inc. (Winne, Banta, Hetherington & Basralian, Hackensack and Proskauer Rose, attorneys; Kenneth K. Lehn and Mr. Sims, on the brief).
J. Barry Cocoziello, Newark, argued the cause for appellants in A-1849-03T2, Jersey Shore Medical Center and Meridian Health Systems (Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, attorneys; Mr. Cocoziello, on the brief).
Gerald H. Clark and Kevin L. Parsons argued the cause for respondents (Lynch * Martin, Brielle and Gill & Chamas, Woodbridge, attorneys; John E. Keefe, Jr., Brielle, Raymond A. Gill, Jr., Woodbridge, Mr. Clark and Mr. Parsons, on the brief).
Ross A. Lewin, Princeton, argued the cause for amicus curiae New Jersey Hospital Association (Windels Marx Lane & Mittendorf, attorneys; Mr. Lewin, of counsel and on the brief; Ellen M. Christoffersen, on the brief).
Before Judges SKILLMAN, COBURN and C.S. FISHER. *89
*90 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Defendants NYT Television, The New York Times Company and Discovery Communications (the "media defendants") and defendants Jersey Shore Medical Center and Meridian Health System (the "medical defendants"), appeal by leave of court from parts of orders entered on October 6, 2003, which denied their motions to dismiss certain causes of action asserted in plaintiffs' complaints.
Before discussing the four causes of action involved in this appeal, we briefly summarize the allegations of the nine nearly identical complaints filed against defendants. All the plaintiffs were admitted to the emergency room at the Jersey Shore Medical Center (Jersey Shore) in the summer of 2001 suffering from severe physical trauma or serious illness. While in the emergency room, plaintiffs were videotaped by the media defendants, with the permission of the medical defendants, for a television show called "Trauma: Life in the ER," which is shown on the Learning Channel. Plaintiffs signed forms consenting to this videotaping at some point during their hospitalizations. However, plaintiffs allege that they were not competent to give such consents due to the severity of their injuries or illnesses and the heavy medications they were receiving at the time. Plaintiffs also allege that the media defendants made various deceptive statements to induce them to sign the consents.
Plaintiffs' complaints asserted numerous causes of action, including claims under the Wiretapping and Electronic Surveillance and Control Act (Wiretap Act), N.J.S.A. 2A:156A-1 to -34, the Hospital Patients Bill of Rights Act, N.J.S.A. 26:2H-12.7 to -12.11, the Consumer Fraud Act, N.J.S.A. 58:8-1 to -20, common law fraud, commercial appropriation of plaintiffs' likenesses, invasion of privacy by an unreasonable intrusion upon the seclusion of another, invasion of privacy by giving unreasonable publicity to another's private life, and unjust enrichment. The Castro complaint seeks certification of a class *92 of plaintiffs consisting of "all persons wherever situated who, at any time from January 1, 1998 to present, while patients at any hospital in the United States, were filmed in connection with the production of the television shown, `Trauma: Life in the ER.'"[1]
The media and medical defendants filed motions to dismiss plaintiffs' complaints on the ground that they fail to state causes of action. In addition, the medical defendants moved to dismiss the class action allegations of the Castro complaint.
The trial court granted defendants' motions to dismiss plaintiffs' claims under the Wiretap Act and also dismissed Kinsella's claim for invasion of privacy by giving unreasonable publicity to another's private life. The court denied defendants' motions with respect to the other causes of action asserted in plaintiffs' complaints. In addition, the court denied the medical defendants' motion to dismiss the class action allegations of the Castro complaint, without prejudice.
The media and medical defendants both moved for leave to appeal from the parts of the October 6, 2003 orders that denied their motions to dismiss plaintiffs' claims for violations of the Hospital Patients Bill of Rights and Consumer Fraud Acts, commercial appropriation of plaintiffs' likenesses and unjust enrichment. In addition, the medical defendants appealed from the part of the order that denied their motion to dismiss the class action allegations of the Castro complaint. We granted both motions.[2]
Before briefing by the parties, we granted Castro's motion for clarification and on January 20, 2004, entered an order that stated: "Since the trial court did not rule upon the appropriateness of class certification, that issue is not before this court on this interlocutory appeal." In addition, we granted motions by the media and medical defendants to consolidate the nine interlocutory appeals taken by each group of defendants, consolidating the appeals by the media defendants under A-1862-03T2 and the appeals by the medical defendants under A-1849-03T2. We now consolidate all the media and medical defendants' appeals into a single appeal.
We conclude that the Hospital Patients Bill of Rights Act does not authorize a private cause of action for a violation of its provisions and that plaintiffs' complaints do not state causes of action for a violation of the Consumer Fraud Act, commercial appropriation of plaintiffs' likenesses or unjust enrichment. Accordingly, we reverse the parts of the October 6, 2003 orders that denied defendants' motions to dismiss those claims. However, we conclude that the trial court did not abuse its discretion in deferring consideration of the part of the Castro complaint that seeks class certification and therefore affirm the denial of the medical defendants' motion to dismiss that aspect of the Castro complaint.
Before discussing the causes of action that are the subject of this appeal, we note that plaintiffs assert three causes of action that defendants acknowledge are viable at this stage of the case. Defendants did not *93 seek leave to appeal from the parts of the trial court orders that denied their motions to dismiss plaintiffs' common law fraud claims. Defendants also admit that plaintiffs' complaints state causes of action for the common law torts of invasion of privacy by an unreasonable intrusion upon the seclusion of another, see Restatement (Second) of Torts § 652B (1977), and (except for Kinsella complaint) invasion of privacy by giving unreasonable publicity to another's private life, see id. at § 652D.

I
The Hospital Patients Bill of Rights Act recognizes seventeen rights of hospital patients, including the rights "[t]o considerate and respectful care consistent with sound nursing and medical practices," N.J.S.A. 26:2H-12.8(a), and "[t]o privacy to the extent consistent with providing adequate medical care to the patient," N.J.S.A. 26:2H-12.8(f). A patient who claims a hospital has violated one of these rights "may file a written complaint against a hospital for failure to comply with the provisions of this act, or any rule or regulation adopted pursuant to the act, either with the hospital or the Department of Health." N.J.S.A. 26:2H-12.10. The recipient of the complaint is required to "respond promptly in writing." Ibid. If the complaint is filed with the Department, it must "investigate ... and report its findings to the hospital and the patient." Ibid. However, the Act does not authorize the Department to award any relief to a patient whose rights have been violated. The Act also does not contain any authorization for a patient to bring a private cause of action. The question, therefore, is whether a patient's right to bring a private action may be implied, notwithstanding the absence of express authorization in the Act.
"New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271, 773 A.2d 1132, 1142 (2001). "To determine if a statute confers an implied private right of action, courts consider whether: (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." Id. at 272, 773 A.2d at 1143. "Although courts give varying weight to each one of those factors, `the primary goal has almost invariably been a search for the underlying legislative intent.'" Id. at 272-73, 773 A.2d at 1143 (quoting Jalowiecki v. Leuc, 182 N.J.Super. 22, 30, 440 A.2d 21, 26 (App.Div.1981)).
The legislative history of the Hospital Patients Bill of Rights Act clearly shows that the Legislature did not intend to create a new private right of action for a violation of the rights recognized thereunder. Legislation to establish a bill of rights for hospital patients was first introduced in 1980. A. 2168, 1980 Leg., 199th Sess. (N.J. 1980). This proposed legislation was patterned after the Nursing Home Residents' Bill of Rights Act, which had been enacted in 1976, L. 1976, c. 120, N.J.S.A. 30:13-1 to -11, and the Boarding Facility Residents' Bill of Rights Act, which had been enacted in 1979, L. 1979, c. 496, N.J.S.A. 55:13B-1 to -21, both of which authorized private causes of action for any violation of the rights recognized thereunder. N.J.S.A. 30:13-8(a); N.J.S.A. 55:13B-21. Like those acts, the proposed Hospital Patients' Bill of Rights Act would have provided a private cause of action. A. 2168, § 4, 1980 Leg., 199th Sess. (N.J. *94 1980). However, the Legislature failed to pass this legislation in 1980 and also failed to pass identical bills introduced in the 1982 and 1984 legislative sessions. A. 464, 1982 Leg., 200th Sess. (N.J. 1982); A. 1073, 1984 Leg., 201st Sess. (N.J. 1984).
The bill that was ultimately enacted was introduced in the 1988 legislative session. Like its predecessors, the original form of this bill authorized patients to bring private actions for violations of the rights recognized thereunder. A. 1843, § 4, 1988 Leg., 203d Sess. (N.J. 1988) (1st reprint). However, the Assembly Health and Human Resources Committee deleted this section and inserted in its place the current N.J.S.A. 26:2H-12.10, which authorizes patients to file complaints for violations of the Act with the hospital or the Department of Health, and another provision, which authorized the Department to impose a fine for any violation. Ibid. The Committee statement accompanying these amendments stated that the purpose of deletion of the provision authorizing private actions to enforce the Hospital Patients Bill of Rights Act was "to minimize the possibility of frivolous lawsuits." Assembly Health and Human Resources Committee, Statement to A. 1843, 1988 Leg., 203d Sess. (N.J. 1988). The proposed provision authorizing the Department to impose fines was subsequently deleted by a floor amendment, A. 1843, § 4, 1988 Leg., 203d Sess. (N.J. 1988) (2nd reprint), and the bill was then passed by both houses of the Legislature and signed into law by Governor Kean on August 14, 1989.
This legislative history demonstrates that the Legislature made a deliberate decision to withhold authorization for patients to bring private actions for alleged violations of the Hospital Patients Bill of Rights Act. There is no reason for us to speculate whether the Legislature eliminated the provision that would have authorized such actions because it concluded that the Department of Health's broad regulatory authority over hospitals would be sufficient to assure compliance with the Act or whether this change was simply a prerequisite to securing the votes needed to pass legislation that had failed of enactment in three prior legislative sessions. In either event, the legislative intent to withhold authorization for private actions is clear, and we are obligated to respect that legislative choice. See Munoz v. New Jersey Auto. Full Ins. Underwriting Ass'n, 145 N.J. 377, 387-89, 678 A.2d 1051, 1056-57 (1996).
Several other considerations reinforce our conclusion that it would be inappropriate to read an authorization for a private cause of action into the Hospital Patients Bill of Rights Act. First, the Act contains an administrative procedure for a patient who believes his rights have been violated to file a complaint with the hospital or the Department of Health, N.J.S.A. 26:2H-12.10. In determining whether the Legislature intended to authorize an implied private cause of action, "a court should be mindful of the `elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.'" Glynn v. Park Tower Apartments, Inc., 213 N.J.Super. 357, 362, 517 A.2d 475, 478 (App.Div.1986). Second, the Legislature has conferred pervasive authority upon the Commissioner of Health to regulate hospitals, which includes not only the specific authority to adopt rules and regulations to effectuate the purposes of the Hospital Patients' Bill of Rights Act, N.J.S.A. 26:2H-12.11, but also general authority to license and regulate private hospitals, N.J.S.A. 26:2H-1 to -26, which includes the authority to suspend or revoke the license of, or assess *95 penalties against, a hospital that fails to comply with its statutory obligations relating to the treatment and care of patients, N.J.S.A. 26:2H-13, 14. Our Supreme Court has indicated that a court should be especially hesitant in implying a right to a private cause of action against an entity that is subject to such pervasive regulation by a State agency. See, e.g., R.J. Gaydos, supra, 168 N.J. at 280-81, 773 A.2d at 1148-49 (refusing to recognize implied private cause of action against insurance company in light of "comprehensive regulation" of insurance industry); Campione v. Adamar of New Jersey, Inc., 155 N.J. 245, 266, 714 A.2d 299, 309 (1998) ("Given the elaborate regulatory scheme" under which casinos operate, the Court "decline[d] to imply a cause of action [against casino] when no such cause of action exist[ed] at common law."). Therefore, in view of the compelling legislative history indicating that the Legislature deliberately withheld authorization for patients to bring private actions for violations of the Hospital Patients Bill of Rights Act and instead provided for the filing of written complaints with the hospital or Department of Health, we conclude that it would be inappropriate to construe the Act as impliedly authorizing a private cause of action.

II
The Consumer Fraud Act (CFA) prohibits:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person....
[ N.J.S.A. 56:8-2.]
The CFA defines "merchandise" to include "services." N.J.S.A. 56:8-1. Thus, to state a cause of action under the CFA, a plaintiff must allege the commission of a deception, fraud, misrepresentation, etc., "in connection with" the sale of merchandise or services. To satisfy this requirement, "[t]he misrepresentation has to be one which is material to the transaction... made to induce the buyer to make the purchase." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 607, 691 A.2d 350, 366 (1997). Moreover, to support a private cause of action, the complaint must allege an "ascertainable loss of moneys or property, real or personal." N.J.S.A. 56:8-19; see Weinberg v. Sprint Corp., 173 N.J. 233, 248-54, 801 A.2d 281, 290-93 (2002).
Even reading plaintiffs' complaints indulgently, as we are required to do on a motion to dismiss for failure to state a claim, Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772, 563 A.2d 31, 48 (1989), the only transactions that are arguably subject to the CFA are the medical defendants' sale of hospital services to plaintiffs. However, plaintiffs do not allege any fraud in connection with those transactions. Plaintiffs do not allege, for example, that defendants made misrepresentations which induced them to seek admittance to Jersey Shore rather than to another hospital or to remain at Jersey Shore after their initial emergency treatment. Rather, the complaints allege that the media defendants fraudulently represented that they were medical professionals in order to gain access to plaintiffs for videotaping and then fraudulently induced plaintiffs to execute consents to the videotaping. Although these allegations may state causes of action for certain common law torts, see supra, at 290, 851 A.2d *96 at 92-93 they do not state claims under the CFA for any deception, fraud or misrepresentation "in connection with" the sale of merchandise or services, because defendants' alleged statements and actions were not "made to induce [plaintiffs] to ... purchase" medical services at Jersey Shore. Gennari, supra, 148 N.J. at 607, 691 A.2d at 366.
Furthermore, plaintiffs' complaints do not allege "any ascertainable loss of moneys or property, real or personal." N.J.S.A. 56:8-19. Plaintiffs' damage claims consist of intangible harm as a result of alleged invasions of their rights of privacy and confidentiality regarding their medical care and treatment. Such alleged harms do not result in an "ascertainable loss of moneys or property" that can support a private cause of action under the CFA. See Gennari, supra, 148 N.J. at 612-13, 691 A.2d at 368-69 (holding that CFA does not provide right of recovery for "non-economic losses"); see also Jones v. Sportelli, 166 N.J.Super. 383, 391-92, 399 A.2d 1047, 1051 (Law Div.1979) (although plaintiffs injured by misleadingly marketed IUD could recover damages under the CFA for the price of the IUDs and the medical services necessitated by their injuries, they could not assert a claim for pain and suffering as the basis for damages under the CFA, because such harm to the psyche is not an "ascertainable loss of money or property").
Because we conclude that plaintiffs' complaints fail to allege any fraudulent statement in connection with the sale of medical services or any ascertainable loss of money or property, we have no need to consider the continuing vitality of our holding in Hampton Hosp. v. Bresan, 288 N.J.Super. 372, 383, 672 A.2d 725, 731 (App.Div.1996) that "hospital services [are not] within the purview of the [CFA because] those same services fall within the purview of the Department of Health," in light of the Supreme Court's subsequent holding in Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 264-75, 696 A.2d 546, 550-51 (1997), that the lending and insurance sales practices of commercial lenders are subject to the CFA even though those activities are comprehensively regulated by the Department of Banking and Insurance. See also Macedo v. Dello Russo, 178 N.J. 340, 840 A.2d 238 (2004) (holding that the advertising activities of "learned professionals" such as physicians are not subject to the CFA).

III
The common law tort of commercial appropriation of a person's name or likeness is one of four torts set forth in Restatement (Second) of Torts § 652 (1977). See Rumbauskas v. Cantor, 138 N.J. 173, 179-82, 649 A.2d 853, 856-57 (1994). The others are invasion of privacy by an unreasonable intrusion upon the seclusion of another, § 652B, giving unreasonable publicity to another's private life, § 652D, and publicity that unreasonably places a person in a false light in the public eye, § 652E. These are four distinct torts with different elements that "have almost nothing in common except that each represents an interference with the right of the plaintiff `to be let alone.'" Rumbauskas, supra, 138 N.J. at 180, 649 A.2d at 856 (quoting Canessa v. J.I. Kislak, Inc., 97 N.J.Super. 327, 334, 235 A.2d 62, 66 (Law Div.1967)).
Plaintiffs acknowledge that their complaints do not state causes of action for publicity that unreasonably places a person in a false light, and defendants acknowledge that plaintiffs' complaints state causes of action for invasion of privacy by an unreasonable intrusion upon seclusion and (except for the Kinsella complaint) giving unreasonable publicity to another's private life. Therefore, the only one of the *97 torts recognized by section 652 of the Restatement that is at issue in this appeal is commercial appropriation of a person's name or likeness.
The foundation for this tort is recognition that a person has an interest in their name or likeness "in the nature of a property right." Restatement (Second) of Torts, § 652C comment a. Its most common form consists of "the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product." Id., comment b. Thus, the use of a person's name or likeness "for trade purposes" is an essential element of the tort. See Faber v. Condecor, Inc., 195 N.J.Super. 81, 88, 477 A.2d 1289, 1293-94 (App.Div.), certif. denied, 99 N.J. 178, 491 A.2d 684 (1984); see also Tellado v. Time-Life Books, Inc., 643 F.Supp. 904, 909-10 (D.N.J.1986) ( "[U]nder New Jersey common law, defendant[s] would be liable for the tort of misappropriation of likeness only if defendant's use of plaintiff's likeness was for a predominantly commercial purpose, i.e., if defendant was seeking to capitalize on defendant's likeness for purposes other than the dissemination of news or information.").
The broadcast of videotape footage on a television show does not give a person who has been videotaped the right to maintain an action for appropriation of his or her likeness because
[n]o one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendants' benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.
[Restatement (Second) of Torts, § 652C comment d (1977).]
Moreover, it is irrelevant whether a videotape is broadcast in connection with a television story about important public events or a subject that provides only entertainment and amusement:
[A] glance at any morning newspaper [shows that news] includes homicide and other crimes, arrests and police raids, suicides, marriages and divorces, accidents, a death from the use of narcotics, a woman with a rare disease, the birth of a child to a twelve year old girl, the reappearance of one supposed to have been murdered years ago, and undoubtedly many other similar matters of genuine, if more or less deplorable popular appeal.
The privilege of enlightening the public [is] not, however, limited to the dissemination of news in the sense of current events. It extend[s] also to information or education, or even entertainment and amusement, by books, articles, pictures, films and broadcasts concerning interesting phases of human activity in general, as well as the reproduction of the public scene in newsreels and travelogues.
[Bisbee v. John C. Conover Agency, Inc., 186 N.J.Super. 335, 343, 452 A.2d 689, 693 (App.Div.1982) (quoting Prosser, Law of Torts, § 118 at 824-25 (4th ed. 1971)).] *98 See also Jenkins v. Dell Publ'g Co., 251 F.2d 447, 451 (3d Cir.) (en banc) ("[I]t is neither feasible nor desirable to make a distinction between news for information and news for entertainment in determining the extent to which publication is privileged."), cert. denied, 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958); cf. Kinsella v. Welch, 362 N.J.Super. 143, 154, 827 A.2d 325, 331 (App.Div.2003) (noting that "[e]ven network national news programs frequently broadcast `human interest' stories that may be considered more entertaining than informative.").
Plaintiffs' complaints do not allege that any of the videotape footage taken of them at Jersey Shore has been used for "trade purposes." Faber, supra, 195 N.J.Super. at 88, 477 A.2d at 1293-94. Their complaints simply assert that "[d]efendants appropriated plaintiffs' likenesses, images and/or names for commercial profit and advantage." However, such an assertion is a conclusion of law, not an allegation of fact that could support this conclusion. Plaintiffs do not allege, for example, that any videotape footage of them was used for any specific promotional purpose. Compare Canessa, supra, 97 N.J.Super. at 356-58, 235 A.2d 62; Faber, supra, 195 N.J.Super. at 88-89, 477 A.2d at 1293-94; Tellado, supra, 643 F.Supp. at 909-10. Therefore, plaintiffs' complaints do not state causes of action for commercial appropriation of their likenesses.

IV
The Restatement of Torts does not recognize unjust enrichment as an independent tort cause of action. Unjust enrichment is of course a familiar basis for imposition of liability in the law of contracts. See Restatement (Second) of Contracts § 345(d) (1981). However, the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion. See Restatement of Restitution Ch. 7 (Introductory Note) (1937) (noting that "[t]here are a number of differences between a tort action which, though restitutionary, is based primarily in wrongdoing, and a quasi-contractual action in which the wrong by the defendant is only incidental to his unjust enrichment."). In fact, one reason for imposition of tort liability for commercial appropriation of a person's name or likeness, discussed in section III of this opinion, is to avoid the unjust enrichment that would result from uncompensated use of the name or likeness of another person. See Restatement (Second) of Torts § 652I comment b (noting that "appropriation of name or likeness ... involves an aspect of unjust enrichment.").
To establish unjust enrichment as a basis for quasi-contractual liability, "a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519, 526 (1994). Such liability will be imposed only if "plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Callano v. Oakwood Park Homes Corp., 91 N.J.Super. 105, 109, 219 A.2d 332, 334-35 (App.Div.1966).
In Fasching v. Kallinger, 211 N.J.Super. 26, 35-36, 510 A.2d 694, 699-700 (App. Div.1986), we held that the surviving next of kin of a murder victim could not maintain an action for unjust enrichment against the author and publisher of a book about the crime. In that opinion, we indicated our agreement with the trial court's conclusion that "the doctrine of unjust enrichment did not apply because plaintiffs never expected any remuneration from the *99 publisher and the author and no direct relationship existed between the parties which would create a reasonable expectation of benefit...." Id. at 35, 510 A.2d at 699.
We reach the same conclusion in this case. Absent express agreement, a member of the general public who is subject to videotaping for a television program cannot reasonably expect that he or she will receive payment from the producer of the show. In fact, a substantial First Amendment issue would be raised if a court were to find a right of compensation in such circumstances. Compare Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 571-78, 97 S.Ct. 2849, 2855-59, 53 L.Ed.2d 965, 973-78 (1977) with Time, Inc. v. Hill, 385 U.S. 374, 397, 87 S.Ct. 534, 546, 17 L.Ed.2d 456, 472 (1967). Therefore, plaintiffs' complaints do not state causes of action for unjust enrichment.

V
The decision as to when to determine the maintainability of a class action is committed to the sound discretion of the trial court. See Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 228, 294 A.2d 7, 12 (1972). Although we do not subscribe to all of the trial court's comments in denying the medical defendants' motion to dismiss Castro's class action allegations, we perceive no abuse of discretion in the court declining to decide the maintainability of a class action at the same time it ruled upon defendants' motion to dismiss plaintiffs' complaint for failure to state a cause of action.
Nevertheless, because we anticipate that defendants will renew their motion to dismiss the class action allegations of the Castro complaint at an early date, we consider it appropriate to provide the trial court with some guidance. First, we note that Rule 4:32-2 requires a determination of the maintainability of a complaint as a class action to be made "[a]s soon as practicable[.]" Second, this determination should not be automatically deferred until plaintiff files a motion for class certification; defendants may bring the issue before the trial court by a motion addressed to the pleadings, as the medical defendants did in this case. See Pressler, Current N.J. Court Rules, comment 1 on R. 4:32-2 (2004). Third, even if the trial court decides that limited discovery is required before determining some aspects of plaintiffs' application for class certification, it should not necessarily defer its determination of other aspects, such as the appropriateness of a national class. See Delgozzo v. Kenny, 266 N.J.Super. 169, 192-94, 628 A.2d 1080, 1092-94 (App.Div.1993). Finally, we note that the dismissal of many of plaintiffs' causes of action may affect the timing of the determination of maintainability of a class action.
Accordingly, we reverse the parts of the October 6, 2003 orders that denied defendants' motion to dismiss plaintiffs' causes of action for violations of the Patient Bill of Rights and Consumer Fraud Acts, commercial appropriation of their likenesses and unjust enrichment. We affirm the denial of the medical defendants' motion to dismiss Castro's class action allegations.
NOTES
[1] This complaint was filed on behalf of two patients treated in the Jersey Shore emergency room, Michael Castro and Julio Trinidad Costa. It is referred to in this opinion as the Castro complaint.
[2] We also granted a motion by the media defendants in the Kinsella case for leave to appeal from an order that denied their motion to compel the return of four cassettes of videotaping at Jersey Shore that contain footage of patients other than Kinsella. Our opinion in that appeal is being filed with this opinion. Kinsella v. NYT Television, 370 N.J.Super. 311, 851 A.2d 105 (App.Div.2004).