851 A.2d 105 (2004)
370 N.J. Super. 311
Joseph KINSELLA, Plaintiff-Respondent,
v.
NYT TELEVISION, the New York Times Company and Discovery Communications, Inc., Defendants-Appellants, and
Jersey Shore Medical Center and Meridian Health System, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 2004.
Decided June 29, 2004.
*106 Charles S. Sims of the New York bar, admitted pro hac vice, New York City, argued the cause for appellants (Winne, Banta, Hetherington & Basralian, Hackensack and Proskauer Rose, attorneys; Kenneth *107 K. Lehn, Carla M. Miller, Matthew J. Morris and Mr. Sims, on the brief).
Gerald H. Clark argued the cause for respondents (Lynch * Martin, Brielle and Gill & Chamas, Woodbridge, attorneys; John E. Keefe, Jr., Brielle, Raymond A. Gill, Jr., Woodbridge, Kevin L. Parsons and Mr. Clark, on the brief).
Before Judges SKILLMAN, COBURN and C.S. FISHER.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal is a sequel to Kinsella v. Welch, 362 N.J.Super. 143, 827 A.2d 325 (App.Div.2003). In that opinion, we concluded that the videotaping by defendants NYT Television and The New York Times Company (collectively NYT) in the emergency room at Jersey Shore Medical Center (Jersey Shore) constituted newsgathering, and therefore the footage that was not broadcast, including the footage of plaintiff Kinsella, is protected from disclosure by the Newsperson's Privilege, N.J.S.A. 2A:84A-21 to 21.13, commonly known as the Shield Law. 362 N.J.Super. at 152-55, 827 A.2d at 330-32. We also rejected various other arguments plaintiff presented in support of affirmance of the trial court order requiring production of the videotape footage of him. Id. at 155-59, 827 A.2d at 331-34. However, we affirmed the part of that order which required NYT to produce any "photos or video" that it "intend[s] to offer into evidence [at trial]." Id. at 159-60, 827 A.2d at 334-35. In reaching this conclusion, we noted that it is a routine part of pretrial discovery to require "a party to litigation to produce any object it intends to introduce in evidence at trial for examination by other parties." Id. at 159, 827 A.2d at 334. In accordance with this discovery rule, we stated that "if NYT contemplates introducing any part of the videotape of plaintiff or any other outtake of its videotaping at Jersey Shore into evidence at trial, it must produce that videotape before trial." Id. at 160, 827 A.2d at 334. The Supreme Court denied plaintiff's motion for leave to appeal from this decision.
Following our remand to the trial court, NYT made a strategic decision to introduce parts of the videotape footage of plaintiff to support its contention that he had consented to the videotaping. NYT's counsel reviewed the videotapes taken by NYT's personnel at Jersey Shore to determine which footage was relevant for this purpose and found footage of plaintiff on four different videocassettes that he "considered potentially usable at trial." NYT's counsel determined to produce all the footage of plaintiff on those four videocassettes for examination by plaintiff's counsel.[1] However, the copies of the four videocassettes provided to plaintiff's counsel included not only all footage of plaintiff but also substantial footage of other patients in the Jersey Shore emergency room. At oral argument before the trial court, NYT's counsel explained that "[t]he mistake was in the rush to send it out to copy I didn't ask that everything else ... extraneous to [plaintiff] be redacted or excluded because of the rush to try, in fairness, [to] give [plaintiff's counsel] what related to Kinsella prior to [his] deposition."
When NYT's counsel became aware that the videocassettes he had produced for examination by plaintiff's counsel included footage of other patients, he asked plaintiff's *108 counsel to return the videocassettes so that this footage could be edited out. Plaintiff's counsel refused.
NYT then filed a motion for a protective order requiring the return of the four videocassettes containing footage of other patients in exchange for edited videocassettes containing only footage of plaintiff. The trial court concluded in an oral opinion that this court's prior opinion required NYT to produce all of any videocassette containing any footage of plaintiff that NYT intends to introduce at trial. Having reached this conclusion, the court did not address plaintiff's alternative contention that NYT had waived its privilege under the Shield Law with respect to footage of patients other than plaintiff by inadvertently producing all of the unedited videocassettes.
The trial court entered an order on October 24, 2003, which memorialized its decision denying NYT's motion to compel the return of the four videocassettes that contain footage of patients other than plaintiff. We granted NYT's motion for leave to appeal from that order[2] and now reverse.
It is plain that our prior opinion did not require NYT to produce for examination by plaintiff's counsel all of any videocassette containing footage of plaintiff that NYT intends to introduce at trial. That opinion simply affirmed the part of a December 19, 2002 order of the trial court that compelled pretrial production of "any photos or videos" that NYT "intend[s] to offer into evidence [at trial]." 362 N.J.Super. at 159-60, 827 A.2d at 334. The order we affirmed did not compel the production of the entirety of any videocassette containing footage NYT intends to offer at trial anymore than it required production of the entire photograph album containing any photograph NYT intends to offer.
The editing of videotapes containing evidence intended to be introduced at trial is a routine procedure, especially when the videotapes contain privileged material that will not be introduced. See Atlantic City Convention Ctr. Auth. v. S. Jersey Publ'g Co., 135 N.J. 53, 69, 637 A.2d 1261, 1269 (1994). Such editing is required to accommodate the policy of the court rules to deny a litigant the "strategic advantage ... [of] withholding evidence it intends to introduce at trial from pretrial discovery," Kinsella, supra, 262 N.J.Super. at 160, 827 A.2d at 334, with the policies served by a privilege such as the Shield Law. The effectuation of the discovery rule policy to avoid unfair surprise at trial does not require production of footage that will not be offered at trial, while the policy of the Shield Law to protect information obtained by the news media from any disclosure to other parties requires withholding such footage from the discovery process. Consequently, there was no reasonable basis for reading our prior opinion to require the production of videotape footage of other patients at Jersey Shore based solely on the fortuitous circumstance that such footage appears on the same videocassette as footage of plaintiff.
We also conclude that NYT did not waive its Shield Law privilege of nondisclosure of footage of other patients as a result of the inadvertent release by its counsel of the entire unedited videocassettes containing footage of plaintiff.
*109 Courts take three different approaches in determining whether the inadvertent disclosure of privileged materials results in a waiver. See generally, Heidi McNeil Staudenmaier & Sara Vrotos, The Inadvertent Disclosure of Privileged Documents: Current State of the Law, 32-SPG Brief 30 (A.B.A., Section of Tort & Insurance Practice, 2003); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2016.2 at 241-46 (2d ed. 1994). One approach, sometimes referred to as the "strict" or "traditional" approach, is that an inadvertent disclosure always results in a waiver. Staudenmaier & Vrotos, supra, 32-SPG Brief at 30. Another approach, sometimes referred to as the "subjective intent" approach, is that an inadvertent disclosure never results in a waiver unless the party protected by the privilege intended to waive it. Ibid. The third approach, sometimes referred to as the "middle" or "balancing of factors" test, applies a balancing test to determine whether an inadvertent disclosure may be found to constitute a waiver. Wright, et al., supra, § 2016.2 (1994 & Supp. 2004). Under this approach, a court will consider:
(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its error.
[Ciba-Geigy Corp. v. Sandoz Ltd., 916 F.Supp. 404, 411 (D.N.J.1995).]
In Trilogy Communications, Inc. v. Excom Realty, Inc., 279 N.J.Super. 442, 445, 652 A.2d 1273, 1275 (Law Div.1994), a trial court adopted the second approach and held that, at least as applied to the attorney-client privilege, "mere inadvertent production of a privileged document by the attorney does not waive the privilege," even if the attorney was guilty of gross negligence. In State v. J.G., 261 N.J.Super. 409, 421, 619 A.2d 232, 238 (App.Div. 1993), we held that if disclosure of material protected by the victim-counselor privilege, N.J.S.A. 2A:84A-22.15, "is wrongfully or erroneously made by the counselor, evidence of the disclosed material is inadmissible." Although we questioned "whether our courts would adopt the strict approach and conclude that the [attorney-client] privilege is automatically waived by reason of an inadvertent disclosure[,]" id. at 420, 619 A.2d at 238, we reached no conclusion regarding the test for waiver of any privilege other than the victim-counselor privilege. See also Seacoast Builders Corp. v. Rutgers, 358 N.J.Super. 524, 550-51, 818 A.2d 455, 471-72 (App.Div.2003). Therefore, while this court has alluded to the different approaches to determining whether the inadvertent disclosure of privileged materials results in a waiver, we have not adopted any specific approach except as applied to the victim-counselor privilege.
As in J.G., we have no need in deciding this appeal to adopt a global rule regarding the test for the determination of a waiver of an evidentiary privilege, because the inadvertent disclosure by NYT's counsel of the entire videocassettes containing footage of plaintiff does not warrant a finding of waiver, even if the gross negligence of counsel could support a finding of waiver under other circumstances. Initially, we note that our Supreme Court has stated that a "[w]aiver under the Shield Law operates only as to those specific materials that are knowingly and voluntarily disclosed." Maressa v. New Jersey Monthly, 89 N.J. 176, 194, 445 A.2d 376, 386, cert. denied, 459 U.S. 907, 103
*110 S.Ct. 211, 74 L.Ed.2d 169 (1982). We would have difficulty concluding that negligence by a news media organization's counsel in disclosing privileged material constituted a "knowing and voluntary" disclosure by the news media organization, which is the holder of the privilege. See State v. Boiardo, 83 N.J. 350, 361, 416 A.2d 793, 798 (1980). Moreover, plaintiff should have known, or at least strongly suspected, immediately upon receipt of the four videocassettes that the failure of NYT's counsel to edit out footage of patients other than Kinsella was inadvertent. In any event, NYT's counsel informed him of this fact only a week later and demanded the return of the videocassettes. Consequently, there is no basis for finding that plaintiff's counsel justifiably relied upon the disclosure of that footage in preparing plaintiff's case and thus no just reason for denying NYT's request for return of the videocassettes. In addition, the inadvertent disclosure of footage of other patients implicates not only the interests of the news media that the Shield Law was designed to protect but also the privacy interests of those other patients. Under these circumstances, the inadvertent disclosure by NYT's counsel of the entire videocassettes containing footage of plaintiff did not result in a waiver by NYT of the protections of the Shield Law with respect to the footage of other patients.
Accordingly, we reverse the order denying NYT's motion to compel the return of the four videocassettes containing footage of other patients and to prohibit plaintiff or his counsel from making any use of that footage.
NOTES
[1] There is also footage of plaintiff on a fifth videocassette. That footage is not at issue in this appeal.
[2] We also granted motions by NYT and the other defendants for leave to appeal from parts of orders denying their motions to dismiss plaintiff's complaint as well as the complaints of other plaintiffs asserting similar claims. Our opinion in those consolidated appeals is being filed with this opinion. Castro v. NYT Television, 370 N.J.Super. 282, 851 A.2d 88 (App.Div.2004).