895 A.2d 1173 (2006)
384 N.J. Super. 601
Michael CASTRO, Julio Trinidad Costa, on behalf of themselves and others similarly situated, Plaintiffs-Respondents/Cross-Appellants,
v.
NYT TELEVISION, The New York Times Company, Discovery Communications, Inc., Jersey Shore Medical Center, and Meridian Health System, Defendants-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2006.
Decided April 19, 2006.
*1174 Charles S. Sims, argued the cause for appellants-cross-respondents NYT Television, The New York Times Company and Discovery Communications, Inc. (Proskauer Rose, Newark, attorneys; Mr. Sims, Matthew J. Morris and John R. Seewald, Jr., Newark, on the brief).
J. Barry Cocoziello, Newark, argued the cause for appellants-cross-respondents Jersey Shore Medical Center and Meridian Health System (Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, attorneys; Mr. Cocoziello, on the brief).
Gerald H. Clark, argued the cause for respondents-cross-appellants (Lynch, Keefe, Bartels, Shrewsbury and Gill & Chamas, Woodbury, attorneys; John E. Keefe, Jr., Richard Sciria and Mr. Clark, Shrewsbury, of counsel and on the brief).
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal involves the maintainability as a class action of a complaint asserting tort claims for invasion of privacy by an unreasonable intrusion upon the seclusion of another and by giving unreasonable publicity to another's private life.
The two putative class representatives, Michael Castro and Julio Costa, were admitted to the emergency room at Jersey Shore Medical Center in July 2001. Castro had a severe stab wound to his abdomen inflicted by his girlfriend and Costa had a serious hand injury caused by catching his hand in a cement mixer. While plaintiffs were in the emergency room, they were videotaped by defendants NYT Television, The New York Times Company and Discovery Communications (referred to collectively as "NYT"), with the permission of defendants Jersey Shore Medical *1175 Center and Meridian Health System (referred to collectively as "Jersey Shore"), for a television show called "Trauma: Life in the ER," which was shown on the Learning Channel.
Plaintiffs signed forms consenting to this videotaping. However, Castro alleges that his consent was given in exchange for NYT's agreement that no information concerning the circumstances of his stabbing would be broadcast and that the footage would be used solely for medical training purposes, and that NYT violated those conditions. Costa, whose native language is Portuguese, alleges that he did not understand the consent form because he cannot read English and no one explained or translated the form for him. He also alleges that he believed the persons who did the videotaping were working for the hospital, not a television show. Some of the videotape footage of both Castro and Costa was broadcast in one of the "Trauma: Life in the ER" television shows.
Plaintiffs' complaint asserted liability on the basis of numerous legal theories. However, we concluded in a prior interlocutory appeal that various counts of the complaint failed to state a cause of action. Castro v. NYT Television, 370 N.J.Super. 282, 851 A.2d 88 (App.Div.2004). As a result of that decision, plaintiffs' only remaining claims are for invasion of privacy by an unreasonable intrusion upon the seclusion of another, invasion of privacy by giving unreasonable publicity to another's private life, and common law fraud.[1]Id. at 290, 851 A.2d 88.
Plaintiffs' complaint sought certification of a class of plaintiffs consisting of "all persons wherever situated who, at any time from January 1, 1998 to present, while patients at any hospital in the United States[2] were filmed in connection with the production of the television show, `Trauma: Life in the ER.'" Plaintiffs' counsel also filed individual actions, containing allegations nearly identical to the complaint in this action, on behalf of eight other patients who were videotaped in the Jersey Shore emergency room. Id. at 287, 851 A.2d 88.
At the conclusion of discovery, plaintiffs moved for class certification. In this motion, plaintiffs sought to expand the proposed class to include not only every patient who was videotaped for "Trauma: Life in the ER" in any hospital anywhere in the country but also every patient who had been "observed" by any of the NYT film crews while videotaping for this television show.
The trial court granted plaintiffs' motion with respect to every patient videotaped or observed at Jersey Shore, but denied certification of a nationwide class consisting of every patient videotaped or observed in any hospital in the United States. The order granting class certification contains the following description of the class:
All persons wherever situated who, at any time from June 26, 2001 through July 27, 2001, while patients at the Jersey Shore Medical Center, had their confidential medical procedures, treatment or information disclosed to and/or observed by persons on behalf of NYT Television; the New York Times Company or Discovery Communications, Inc. in connection with the production of a television show called, "Trauma: Life in the ER."
We granted defendants' motions for leave to appeal the order certifying this *1176 class and plaintiffs' cross-motion for leave to appeal the order denying the part of their motion that sought certification of a nationwide class. We now consolidate NYT's and Jersey Shore's appeals.
On appeal, defendants argue that the trial court erred in certifying any class at all because issues common to the putative class do not predominate over issues affecting only individual members, and a class action would not be superior to an individual action for the fair and efficient adjudication of the controversy. In the alternative, defendants argue that even if the court properly granted class certification, it erred in expanding the class to include patients who were observed but not videotaped by the NYT film crew because the claims of such patients are barred by the statute of limitations.
We conclude that the trial court erred in granting class certification because issues common to the class do not predominate over individual issues. This conclusion makes it unnecessary to address defendants' alternative argument. Because the trial court erred in certifying any class at all, it follows a fortiori that the court properly denied certification of a nationwide class.

I
Plaintiffs moved for class certification under Rule 4:32-1(b)(3). A putative class representative seeking certification under this rule must satisfy the general prerequisites for maintenance of a class action set forth in Rule 4:32-1(a), as well as the requirements of Rule 4:32-1(b)(3). Rule 4:32-1(a) provides:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Rule 4:32-1(b)(3) provides in pertinent part:
An action may be maintained as a class action if the prerequisites of paragraph (a) are satisfied, and in addition: . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
Although defendants do not concede that plaintiffs satisfy the requirements for maintenance of a class action set forth in Rule 4:32-1(a), they have not addressed any arguments relating to those requirements as applied to the patients who were videotaped. Consequently, we assume for the purposes of this opinion that those requirements have been satisfied and only consider whether plaintiffs have established the requirements of Rule 4:32-1(b)(3) that class issues must predominate over individual issues and that a class action provides a superior method for adjudication of plaintiffs' claims.
To determine whether a proposed class action satisfies the requirement of "predominance," a trial court must first identify "the relevant factual and legal issues" in the case. In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 426, 461 A.2d 736 (1983). "A conclusion on the issue of predominance requires an evaluation of the legal issues and the proof needed to establish them." Id. at 430, 461 A.2d 736. This determination requires a court to consider the elements of the causes of action asserted by the plaintiffs and the nature of any defenses raised by the defendants. See id. at 426-30, 461 A.2d 736; *1177 Carroll v. Cellco P'ship, 313 N.J.Super. 488, 495-505, 713 A.2d 509 (App.Div.1998); Saldana v. City of Camden, 252 N.J.Super. 188, 197-99, 599 A.2d 582 (App.Div. 1991). The requirement of Rule 4:32-1(b)(3) that common issues of law or fact must predominate over any issues affecting only individual members of the class is "far more demanding" than Rule 4:32-1(a)(2)'s requirement that there be questions of law or fact common to the class. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689, 713 (1997).
In this case, plaintiffs assert causes of action for invasion of privacy by an unreasonable intrusion upon the seclusion of another and invasion of privacy by giving unreasonable publicity to another's private life,[3] and defendants' primary defense is that plaintiffs and every other alleged class member who was shown on "Trauma: Life in the ER" consented to the videotaping and broadcasting. A review of the proofs required to establish plaintiffs' invasion of privacy claims and defendants' consent defense demonstrates that this is not a case in which class issues predominate over individual issues.

II
The elements of invasion of privacy by unreasonable intrusion upon seclusion, which our courts recognized in Bisbee v. John C. Conover Agency, Inc., 186 N.J.Super. 335, 339, 452 A.2d 689 (App. Div.1982) and Rumbauskas v. Cantor, 138 N.J. 173, 179-82, 649 A.2d 853 (1994), are delineated in the Second Restatement of Torts:
One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
[3 Restatement (Second) of Torts § 652B (1977).]
To establish liability for this tort, a plaintiff must show that "the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Id. § 652B cmt. b.
Although the record of the videotaping conducted by NYT at Jersey Shore is limited to the footage actually broadcast, it is evident from this footage that the circumstances of the videotaping of individual patients varied greatly. Some of the videotaping was conducted in public areas of the hospital, such as the waiting room or hallways, while other videotaping was conducted in private areas, such as operating or patient rooms. Some of the videotaping consisted of interviews of patients lying in bed, while other footage was of patients who were unconscious or semi-conscious or of doctors performing surgery.
Therefore, a trier of fact could find that the videotaping of some patients at Jersey Shore would not support imposition of liability for invasion of privacy by unreasonable intrusion upon seclusion, either because the videotaping did not involve any "intru[sion] ... upon the solitude or seclusion of [the patients] or [their] private affairs or concerns" or because "the intrusion would [not] be highly offensive to a reasonable person." Id. § 652B. On the other hand, a trier of fact could find that *1178 NYT's videotaping of other patients satisfied all the elements of this cause of action. See Estate of Berthiaume v. Pratt, 365 A.2d 792, 795 (Me.1976) (physician photographing dying patient in hospital, over the patient's objection, could be found liable to his estate for an unreasonable intrusion upon his seclusion); Miller v. Nat'l Broad. Co., 187 Cal.App.3d 1463, 232 Cal.Rptr. 668, 678-81 (1987) (television broadcasting company that filmed victim of heart attack in his home without consent while paramedics unsuccessfully attempted to resuscitate him could be held liable to widow for unreasonable intrusion upon seclusion). Thus, the determination of defendants' liability for this tort will necessarily turn on the particular circumstances of the videotaping of each individual plaintiff, including the nature of the area where the videotaping was conducted, the appearance of the plaintiff during the videotaping, what medical procedure, if any, was being performed, and whether the plaintiff objected to or welcomed the videotaping. Moreover, the amount of damages to be awarded to any plaintiff whose right to seclusion was unreasonably intruded upon would depend on evidence of those same individual circumstances.
Consequently, even though all the claims of invasion of privacy by an unreasonable intrusion upon seclusion are based upon what the trial court characterized as a "common thread of facts"  NYT's videotaping of patients in the Jersey Shore emergency room  the proof of those claims will rest on evidence of the individual circumstances surrounding the videotaping of each patient rather than factual circumstances common to all putative class members.

III
Plaintiffs' claim of invasion of privacy by giving unreasonable publicity to another's private life also depends upon the circumstances of the broadcasting of footage of each individual plaintiff.
The elements of this cause of action, which our courts recognized in Bisbee, supra, 186 N.J.Super. at 340-41, 452 A.2d 689 and Romaine v. Kallinger, 109 N.J. 282, 297-300, 537 A.2d 284 (1988), are delineated in the Second Restatement of Torts:
One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his [or her] privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.
[Restatement (Second) of Torts, supra, § 652D.]
Initially, we note that this cause of action may be asserted only by those plaintiffs who were actually shown on one of the two "Trauma: Life in the ER" television shows based on the filming at Jersey Shore. As explained in the comments to this section of the Restatement:
"Publicity," as . . . used in this Section... means that the matter is made public[] by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.. . .
Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.
[Id. § 652D cmt. a.]
Thus, claims for invasion of privacy by giving unreasonable publicity to the private life of another may not be predicated on the fact that the small group of people who filmed and edited the television show *1179 may have learned information concerning plaintiffs' private lives.
One element of this cause of action that any patient who was shown on "Trauma: Life in the ER" would be required to prove is that the information broadcast on the television show was in fact "private." However, the putative class representatives, as well as one plaintiff who brought an individual action, may have difficulty proving this element because stories concerning the incidents that resulted in their admittance to Jersey Shore were published in local newspapers. Consequently, the trial of these plaintiffs' claims of invasion of privacy by giving unreasonable publicity to their private lives will involve individual determinations of whether the information about their lives revealed in the television show was actually private even though it had been previously revealed in newspaper articles. See Ferraro v. City of Long Branch, 314 N.J.Super. 268, 290-91, 714 A.2d 945 (App.Div.), certif. denied, 157 N.J. 541, 724 A.2d 801 (1998) (recognizing that prior publication of information in a newspaper may be relevant to this element of the cause of action).
Moreover, the alleged "private facts" about each patient revealed in the television show varied greatly. For example, putative class representative Costa was not named or interviewed in the episode in which he appeared and in fact is barely identifiable, while putative class representative Castro was identified by name, shown talking to the camera, and most significantly, the narrator indicated that Castro's injuries were caused by his wife stabbing him. Thus, the determination whether the dissemination of information concerning plaintiffs' alleged private lives "would be highly offensive to a reasonable person," which is another element of this cause of action, Restatement (Second) of Torts, supra, § 652D, also would have to be made on a case-by-case basis. Therefore, the proof of this cause of action will turn on the factual circumstances of the broadcasting of each individual plaintiff and is not suitable for presentation in a class action.

IV
Every patient who was shown on "Trauma: Life in the ER" signed a written consent to the videotaping and broadcasting. If those consents were valid, they presumably would provide a complete defense to the claims of the plaintiffs who signed them. See Raroha v. Earle Finance Corp., 47 N.J. 229, 234, 220 A.2d 107 (1966). However, plaintiffs allege that their consents were invalid for varying reasons. Castro testified at his deposition that NYT representatives agreed, as a condition of his consent, that the circumstances of his stabbing, which was a domestic violence incident, would not be publicized and that the videotape footage of him would be used for medical training purposes, both of which conditions NYT violated. Costa, whose native language is Portuguese, testified that he did not understand the consent form because he does not read English, and no one translated or explained the form to him. Several plaintiffs in the individual actions testified that they did not have the capacity to consent to the videotaping because they were heavily medicated when they signed the forms. Another plaintiff testified that an NYT representative stated that an unnamed "sponsor" would pay his medical bills if he consented to the videotaping and broadcasting. Therefore, the determination of the validity of the patients' consents does not involve a common question of law or fact, but will instead require the presentation of proofs relating to the individual circumstances of each plaintiff's execution of the consent form. Cf. Carroll, supra, 313 N.J.Super. at 505, 713 A.2d 509 (noting that where misrepresentation claims involve individual interactions between defendants' *1180 representatives and each individual plaintiff, "common issues do not predominate over the separate and distinct issues of law and fact").
Although there probably were some patients in the Jersey Shore emergency room who were videotaped but did not sign consent forms, plaintiffs have not identified any such patients. Furthermore, even as to patients who did not sign written consent forms, NYT may be able to show that they gave oral consent or implied consent by their conduct. Whatever the form of consent, however, the parties would have to present individualized proofs regarding the circumstances of that alleged consent.
In sum, the claims of each of the putative class members depends primarily on proofs that cannot be presented on a group basis. Therefore, the trial court erred in concluding that questions of law and fact common to the class predominate over questions affecting only individual members.

V
Because plaintiffs failed to establish the predominance of class issues over individual issues, there is no need to address the additional requirement that a party seeking class certification under Rule 4:32-1(b)(3) establish that a class action provides a method of adjudication of the putative class members' claims that is superior to individual actions. See Muise v. GPU, Inc., 371 N.J.Super. 13, 37, 851 A.2d 799 (App.Div.2004). However, if this requirement had to be addressed, we would conclude that plaintiffs failed to show the superiority of a class action for substantially the same reasons plaintiffs failed to show that issues common to members of the class predominate over issues affecting only individual members.
Accordingly, the denial of certification of a nationwide class is affirmed. The certification of a class of patients who were videotaped or observed by NYT while at Jersey Shore is reversed, and the case is remanded to the trial court.
NOTES
[1] Plaintiffs do not discuss their common law fraud claim in the brief filed on this appeal, and defendants suggested at oral argument that this claim should be deemed abandoned.
[2] The parties indicate that such videotaping was conducted in thirty-five hospitals located in twenty-two states.
[3] As previously noted (n. 1), plaintiffs also assert a common law fraud claim, which they apparently are not pursuing. The only alleged fraud relates to the manner in which the NYT defendants obtained plaintiffs' consents to the videotaping. Thus, this allegation appears to be directed at negating defendants' consent defense, rather than stating an independent cause of action.